IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DAVID J. CORTESE, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| v. | ) | 6:20-cv-7128 |
| | ) | |
| WEGMANS FOOD MARKETS, INC. | ) | COMPLA I NT |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMAND |
| | ) | |

**NATURE OF THE ACTION**

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") and Title VII of the Civil Rights Act of 1964 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to an employee who was adversely affected by such practices. As alleged with greater particularity below, Plaintiff alleges that Defendant Wegmans Food Markets, Inc. (hereinafter also referred to as "Wegmans" or "Defendant" or "Employer") discriminated against Plaintiff David J. Cortese, who is a qualified individual with a disability, when it failed to engage in the required interactive process regarding his qualified disability, and when it failed to accommodate his reasonable requests for accommodation and when it subjected him to adverse consequences in employment as well as when it created a hostile work environment, as a direct and proximate result of the foregoing. On behalf of Plaintiff David J. Cortese, (referred to hereinafter as "David Cortese" or "Plaintiff"), for his complaint against Defendant Wegmans, states as follows:

1

**Jurisdiction and Venue**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of New York, Rochester Division.

3. Venue of this action in the United States District Court for the Western District of New York is proper pursuant to 28 U.S.C. § 1391(b) because the Plaintiff was employed and subjected to employment discrimination in the Western District, and a substantial part of the events giving rise to these claims, occurred here.

4. All conditions precedent to the filing of this lawsuit have been met. Plaintiff timely filed a charge of disability discrimination with the New York State Division of Human Rights ("NYSDHR") Case Number 10206426, and with the United States Equal Employment Opportunity Commission ("EEOC"). Federal Charge Number 16GC001789.

5. Plaintiff files the instant Complaint within 90 days from his receipt of the "Right To Sue Letter" he received from the EEOC.  (EEOC Right To Sue Letter attached as Exhibit "**A**").

**PARTIES**

6. Plaintiff, David Cortese, is an individual and resident of Monroe County, New York, who was employed by Defendant from 1992 until November 8, 2019 when Wegmans terminated his employment.

7. Plaintiff's last position was that of "Full-Time Warehouseman" in the Grocery, where he was earning $27.85 hourly.

8. At all relevant times, Defendant, Wegmans Food Markets, Inc. has continuously been an "Active Domestic Business Corporation" in New York State, with its headquarters located at 1500 Brooks Avenue, Rochester, New York, 14624.

9. At all times relevant hereto, Wegmans has been doing business in New York State, and within the jurisdiction of the Federal Court, Western District, New York and has continuously had at least 15 employees.

10. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

**STATEMENT OF CLAIMS**

11. More than thirty days prior to the institution of this lawsuit, David Cortese filed a charge with the NYSDHR and EEOC alleging violations of the ADA against Defendant Employer. All conditions precedent to the institution of this lawsuit have been fulfilled.

12. Plaintiff began his employment with Wegmans in 1992, when he was hired to work in Distribution Warehouses in Rochester, NY.

13. Plaintiff performed the duties of his job admirably over the many years that he worked for Wegmans, and the quality of his job performance was stellar.

14. Over the years of his employment, however, Plaintiff had taken medical leaves, including Family Medical Leave Act related leaves (continuous and intermittent leaves of absence, as well as periods of reduced hours) related to his qualified disability.

15. David Cortese took approximately 14 weeks of continuous medical leaves between April of 2018 and July of 2018.

16. David Cortese also had reduced work hours from July 31, 2018 until September 25, 2018, because of his disability, after which he returned to working his regular schedule.

17. David Cortese had been plagued with bad knees, for which he had required two knee replacement surgeries and to which most of his medical leaves related.

18. More specifically, Plaintiff has had both knees replaced, with his left knee being replaced in or about June of 2016 and the right knee being replaced in or about May of 2018.

19. His meniscus was torn in both knees due to two separate work-related accidents, both of which were established to have been caused by and during his employment during Workman's Compensation proceedings.

20. The resulting pain in his knees caused Plaintiff to have restrictions in his employment. (See Exhibit "**B**").

21. As a result of the foregoing, Plaintiff also had a small fracture in his femur and significant arthritis in both knees, all of which caused significant and debilitating pain which affected his ability to work more than six hours at any given time, and which required that he be given weekends off to rest his knees, and his right knee in particular.

22. Notwithstanding his knee-related disability and significant pain related to "flare-ups" to his right knee due to "SLP TKA", and related restrictions he had been placed on by his Orthopedic Surgeon, in the summer of 2019, Team leader Kevin Young, who was Plaintiff's Supervisor, was routinely forcing Plaintiff to work excessive amounts of overtime, which aggravated Plaintiff's knee pain unnecessarily.

23. Kevin Young also routinely assigned jobs that were too physically demanding upon Plaintiff based on his condition.

24. During the summer of 2019, Plaintiff duly complained to Kevin Young that he was unable to work the amount of overtime he was being assigned due to his severe knee pain, and related medical condition.

25. On July 15, 2019, Kevin Young summoned Plaintiff into his office and literally gave him an ultimatum: he could either work the assignments he gave to Plaintiff without complaining, or he could "go home".

26. Plaintiff made it clear to Kevin Young that his knee pain required accommodations, but Kevin refused to engage in the required interactive process.

27. At said meeting with Kevin Young, Plaintiff attempted to tell Young that he had spoken with Kevin's boss, Steve Stresnix, about the accommodations he needed in terms of job assignments, but Young didn't even consider such accommodation.

28. Kevin Young said to Plaintiff at said meeting: "Steve is not here, so you're going to do what I tell you to do".

29. The foregoing admonition was in direct contravention of the accommodations Plaintiff had requested of Kevin Young's superior, and which he required in order to perform the

essential functions of his job, and his supervisor, Team Leader Kevin Young, was willfully ignoring those accommodations.

30. Kevin Young went out of his way to assign Plaintiff to jobs that were highly physical in nature and usually given to new employees, typically younger in age.

31. Plaintiff had been with Wegmans for 27 years, and he could tell that Wegmans was going out of its way to cease accommodating him for his work-related injuries and related disabilities.

32. Simply put, Wegmans was sick and tired of accommodating David Cortese and began to act in a manner that demonstrated that lack of tolerance in the workplace.

33. As a result, Wegmans created a trap for Mr. Cortese, which would later serve as pretext for terminating his longstanding employment.

34. On or about November 5, 2019, about 4 hours into his shift, Plaintiff David Cortese had a family emergency arise.

35. Plaintiff informed his supervisor, "Revlon", that he had to leave and that a family member had informed him that his pet dog was dying.

36. Plaintiff's supervisor "Revlon" explicitly allowed Plaintiff to return home to attend to his family emergency, and even informed Plaintiff that he would only have a half-point toward his attendance, which directly implied that the early departure from work was excused by Wegmans.

37. Notwithstanding having been permitted to leave work on November 5, 2019, the next night, when Plaintiff arrived for work, Kevin Young once again summoned Plaintiff into his office whereupon he told Plaintiff to go home, and that he would likely be fired from his job

which he had held for 27 + years because he had gone home the day before, due to his family emergency.

38. Plaintiff never would have risked his livelihood if he had not been permitted to leave work, but Wegmans sought to trap Plaintiff by leading him to think he had permission, only to move the goalposts the very next day, as a means of pretextually terminating his employment.

39. Kevin Young in fact sent Plaintiff home despite the fact that the attendance policy Plaintiff was led to believe was in place would have permitted him to go home without losing his job.

40. Kevin Young purported to invoke a second, stricter attendance policy that was no longer in place at Wegmans when he told Plaintiff to leave work and return home.

41. At all relevant times hereto, Plaintiff was being seen by WNY Orthopaedic Associates for his knee-related disability.

42. The foregoing was tantamount to outrageous harassment of Plaintiff, and the repeated and pervasive nature of the harassment and insensitivity was akin to a hostile work environment.

43. Defendant's ruthless refusal to engage in the interactive process or to even consider possible accommodations for Plaintiff's restrictions, and sending him home due to having attended to a family emergency, was tantamount to a hostile work environment because it was a malicious act, that had the ultimate penalty attached to it, and was motivated by a cruel and malignant desire to see Plaintiff suffer the penultimate fate in employment – joblessness - all because he dared seek accommodations for restrictions related to a qualified disability.

44. That Defendant may have accommodated Plaintiff in the past is of no

consequence to the instant action insofar as Plaintiff's allegations in the instant action relate to those instances described herein-above, in which Wegmans' failed to accommodate him or to even engage in the interactive process, and terminated his employment, discriminatorily, precisely because he had required accommodation in the past.

45. The accommodations sought by Plaintiff were objectively reasonable and would not have caused an undue hardship on Defendant had it chose to accommodate him. For example, he requested to have jobs assigned to him that did not require excessive bending, lifting or pulling.

46. In any event, whether the accommodations Plaintiff sought were reasonable or whether they would have caused an undue burden on Defendant is not even a dispositive issue in the case at bar because the Defendant cut off discussion with Plaintiff and threatened to send him home after unilaterally deciding it would not accommodate his restrictions, thereby foreclosing even the possibility of accommodation via the required interactive process.

47. Plaintiff was, at all relevant times hereto, an individual with a qualified disability of which the Defendant was duly made aware by Plaintiff during his employment with Defendant.

48. At all times during his employment with Defendant, Plaintiff performed the duties of his employment satisfactorily, and was able to perform the essential functions of his position with accommodation for his disability.

49. In light of the foregoing, Defendant also subjected Plaintiff to a hostile work environment inasmuch as the harassment described herein-above was pervasive, outrageous, undeserved and completely unjustified.

50. In denying Plaintiff's request for accommodation as described above, Defendant

failed utterly to engage in the required interactive process and instead affirmatively blocked Plaintiff's attempt to begin a dialogue about his medical condition.

51. Plaintiff was qualified for the position he held, and Defendant could have accommodated Plaintiff's request for accommodation without undue hardship as evidenced by the fact that Defendant it had already provided Plaintiff substantially similar accommodations in the past.

52. In failing to accommodate Plaintiff by allowing him to work appropriate jobs that did not require heavy lifting, pulling or excessive bending, Defendant maliciously and scornfully discriminated against Plaintiff based upon his disability in an unequivocal violation of the ADA.

53. The effect of the practices complained of herein-above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee, because of his disability and to otherwise have subjected him to emotional distress and physical and mental impairments for which punitive damages are justified.

54. The unlawful employment practices complained of herein-above were intentional.

55. The basis upon which Defendant Wegmans purported to fire Plaintiff for was pure pretext insofar as its termination of Plaintiff's longstanding 27-year employment with Wegmans was not ended as a result of his having attended to his dying dog, but rather, because he was a disabled employee who routinely required accommodations for his disability, and Wegmans was not willing to further accommodate their employee any further.

**Counts One and Two: Disability Discrimination in Violation of ADA and N.Y. Exec. Law, art. 15 ("Human Rights Law"):**

56. Defendant discriminated against Plaintiff, a disabled employee who suffered from a qualified disability when, because of Plaintiff's membership in said protected class, subjected

9

him to adverse conditions in employment as set forth hereinabove, thus causing him joblessness, pecuniary harm, emotional distress damages as well as out of pocket costs.

### Counts Three and Four: Hostile Work Environment:

57. Defendant created a hostile work environment for Plaintiff in violation of the ADA and Human Rights Law when it scornfully and coldly overworked Plaintiff, and willfully disregarded his restrictions, denied Plaintiff accommodations, failed to engage in the interactive process with Plaintiff, blamed Plaintiff for its own failure to engage in the interactive process and finally when it fired him for an absence that it had initially excused.

### Count Five: Punitive Damages:

58. Defendant ought to be punished for its malicious discriminatory treatment of Plaintiff as set forth herein-above.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against qualified individuals with a disability when seeking reasonable accommodation for said qualified disability, or perceived disability in the workplace.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with a disability, which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant Employer to make whole David Cortese, by providing appropriate backpay and lost wages, with prejudgment interest, in amounts to be determined at

trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

      D.      Order Defendant Employer to make whole David Cortese by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein-above, including but not limited to: medical expenses, attorney's fees and all other out of pocket and anticipated expenses in amounts to be determined at trial.

      E.      Order Defendant Employer to make whole David Cortese by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices, including the discrimination and retaliation complained of herein-above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

      F.      Order Defendant Employer to pay David Cortese individual punitive damages for its malicious and reckless conduct, as described herein-above, in amounts to be determined at trial.

      G.      Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by its complaint.

Respectfully Submitted,

                                                `S:/ James D. Hartt`
                                                **Bar #516129**
                                                **JAMES D. HARTT, ESQ.**
                                                **Attorney For Plaintiff**
                                                **6 N. Main Street, Suite 200-F**
                                                **Rochester, NY 14450**

**Telephone: (585) 490-7100**
**Fax: (716) 299-2006**

```
ORIGINAL of the foregoing was
filed this 30th Day of December, 2020 with:
The Clerk of the Federal District Court
Western District, New York
```